VILLAGE OF COLUMBIANA, APPELLEE, *v.* KEISTER, APPELLANT.

VILLAGE OF COLUMBIANA, APPELLEE, *v.* SANDERS, APPELLANT.

(Nos. 81-C-12 and 81-C-13—Decided December 10, 1981.)

*Mr. Daniel A. Blasdell,* city attorney, for appellee.

*Mr. David Barry Dickson,* for appellants.

LYNCH, P.J. These two cases were tried together in the trial court and were argued together in this court.

Defendant-appellant Donald Sanders appeals his conviction and sentence by the Eastern Area Columbiana County Court for locating and installing a mobile home, also known as a house trailer, within the village limits of the village of Columbiana in violation of Columbiana Ordinances Sections 1325.01 and 1325.04.

Defendant-appellant Robert Keister appeals his conviction and sentence by the same court for aiding or abetting Sanders in the above alleged crime in violation of Columbiana Ordinance Section 501.1.

Prior to trial both defendants filed motions for dismissal of the charges against them on the grounds that subject ordinances were unconstitutional. The trial court overruled both motions.

Both defendants stipulated that subject mobile home is situated on real estate owned by defendant Keister which is zoned C-4 Intensive Automotive Oriented Commercial District, which does not contemplate mobile homes; that such mobile home is owned and occupied by defendant Sanders, who is an employee of defendant Keister; that both defendants received notices pursuant to the applicable ordinance and that they did not remove subject mobile home within the required two weeks after receiving such notices.

Defendant Keister, who operates a used car sales and auto parts business on subject property, testified that during the first year and a half that he was doing business at subject location, close to a dozen burglaries were committed on this property in which cars, a wrecker and miscellaneous parts from cars were stolen, most of which were never recovered; that the losses from such burglaries were such that he had either to do something to protect his property or to close up his business; that in the first part of 1980 he went to Don Sumrok, the former Chief of Police of the Columbiana Police Department and asked him what could be done to prevent the burglaries at subject location; that Chief Sumrok told him that the best solution would be to put a trailer on the property and have someone live on it; that pursuant to Chief Sumrok's suggestion he arranged with defendant Sanders to have Sanders' mobile home moved onto subject property on April 1, 1980; that defendant Sanders and his wife have lived there ever since; that there have not been any burglaries on sub-

ject property since the Sanderses have been living on subject property; that he does not charge the Sanderses any rent; that defendant Sanders is black; that he heard through the neighbors that there was a complaint that he had a black man living on subject property; that defendant Sanders is a full-time employee; and that defendant Sanders washes cars, makes car repairs and runs errands besides being the watchman.

Defendant Keister further testified that when subject mobile home was moved onto subject property, he went to the village of Columbiana and applied for utilities, namely, electricity and water; that the city authorities refused to hook up such utilities to subject mobile home because it was against the ordinance and that he connected the utilities servicing his property to subject mobile home.

Counsel for plaintiff asked defendant Keister if it would not be just as easy to hire a night watchman than to have subject mobile home on his property. Keister responded, in effect, that it was not economically feasible to hire a night watchman.

The first four assignments of error of defendants are as follows:

"1.   Per se exclusion of mobile homes and/or house trailers from all areas except mobile home parks and existing installations is unconstitutional in that there is no substantial relation to the health, safety, morals, or general welfare of the community.

"2.   The Village Ordinance as applied to these defendants is unconstitutional in that it is not based on the health, safety, morals, or general welfare of the community.

"3.   The exclusion of the location and/or installation of house trailers ONLY, under Ordinance 1325.01, is arbitrary and unreasonable and not based upon justifiable exercise of police powers.

"4.   Columbiana Village Ordinance 1325.01 is unconstitutionally vague in that it fails to adequately define the mean-

ing of the terms 'mobile homes' or 'house trailers,' nor does it specifically incorporate by reference the definition of such terms contained in O.R.C. 4501.01 or any other statute or ordinance.''

These assignments of error will be discussed together because they challenge the constitutionality of the applicable ordinances in this case.

The pertinent ordinances of the village of Columbiana to this case are under Chapter 1325 entitled "Mobile Homes" and provide that mobile homes or house trailers that existed prior to the enactment of subject ordinances are permitted as long as they remain in their present location, but if they are removed for more than ninety days the relocation or reinstallation of such mobile homes is prohibited. The planning commission is authorized, if it should so desire, to establish a new zone within the municipality to be known as a trailer park zone. However, there is no evidence in this case that any new zone for trailer parks has been created by the planning commission.

Ordinance 1325.01 provides as follows:

"The location and/or installation of mobile homes, also known as house trailers, within the Municipality, is hereby prohibited after the effective date of this chapter.''

We hold that under the ordinances of and the situation in the village of Columbiana, any additional mobile home is prohibited from being located or installed within the village of Columbiana.

R.C. 1151.299(A)(1) provides as follows:

" 'Mobile home' means a movable dwelling constructed in one or more units to be occupied on land, having a minimum width of ten feet and a minimum area of four hundred square feet and containing living facilities for year-round occupancy by one family, including permanent provision for eating, sleeping, heating, cooking, and sanitation.''

R.C. 4501.01(J) provides as follows:

" 'House Trailer' means any self-propelled and nonself-propelled vehicle so designed, constructed, reconstructed, or added to by means of accessories in such manner as will permit the use and occupancy thereof for human habitation, when connected to indicated utilities, whether resting on wheels, jacks, or other temporary foundation and used or so constructed as to permit its being used as a conveyance upon the public streets or highways.''

We overrule defendants' fourth assignment of error because there are statutory definitions of both "mobile homes" and "house trailers."

Zoning regulations which exclude trailer parks from the entire territory of the enacting township or municipality have been held not to conflict with state statutes which regulate trailers and are a constitutional exercise of legislative power. *Davis* v. *McPherson* (App. 1955), 72 Ohio Law Abs. 232 [58 O.O. 253], dismissed for want of debatable constitutional question (1955), 164 Ohio St. 296 [58 O.O. 157]; see *Stary* v. *Brooklyn* (1954), 162 Ohio St. 120 [54 O.O. 56]; *Renker* v. *Brooklyn* (1942), 139 Ohio St. 484 [22 O.O. 524]; *State, ex rel. Cunagin Constr. Corp.,* v. *Creech* (1969), 23 Ohio App. 2d 13 [52 O.O.2d 8]; 10 Ohio Jurisprudence 3d 409-410, Buildings, Zoning and Land Controls, Section 207.

None of the above-mentioned decisions of the Supreme Court has been overruled. We feel that by implication they are applicable to the mobile home which is the subject of this case.

All the above-cited cases concerned trailers. In the *Renker* case the average floor space of the trailers was approximately one hundred nineteen square feet while in the *Stary* case, the average trailer was twenty-nine feet nine inches in length by eight feet in width with an average inside width floor area of approximately two hundred square feet. *Stary, supra,* at 123.

R.C. 1151.299 provides that a mobile

home has a minimum area of four hundred square feet and permits its financing by building and loan associations through the purchase of mobile home chattel paper. 9 Ohio Jurisprudence 3d 414, Banks and Financial Institutions, Section 482. We feel that there is a sufficient difference between a mobile home and a trailer that the existing law on trailer parks and trailers should be re-examined as to its application to mobile homes. However, we believe that the proper forum for such re-examination is the Ohio Supreme Court rather than this court.

For the foregoing reasons, we overrule defendants' first four assignments of error.

Defendants' fifth assignment of error is that a pattern of discrimination in enforcement of the village ordinances, Sections 1325.01 and 1325.04, has been consciously practiced by the village of Columbiana and its officials are precluded from prosecuting the defendants.

The evidence established that on the commercial property located across the street from subject property, which is owned by Susany, there was a trailer that is eight feet by thirty feet which has been there for at least five months. The trailer consisted of two rooms with a partition and doorway between them. In the front portion of the trailer was a desk and an engineer type table and the rear portion contained such items as shovels and related construction tools. No utilities were hooked up to the trailer and no one occupied it. The village manager characterized the trailer as a mobile home.

There also has been, for the past four years, a trailer located on the Saverwein property which was occupied by Deluxe Motors. The trailer consists of two rooms with partial partitions which contain three desks, assorted file cabinets, several storage-type cupboards, a coffee machine, a heating system, and a keyboard containing keys for used vehicles. Electricity was connected to this trailer, but there was no water or plumbing facilities. It appeared to be used as an office rather than as a residence.

We find that despite the express provisions of the applicable ordinances, the village of Columbiana has permitted trailers that are incidental to the commercial use of commercially zoned property to be located on such property without interference by such municipality.

*State* v. *Vadnais* (1972), 295 Minn. 17, 202 N.W. 2d 657, concerned a mobile home temporarily parked and occupied by defendant's ailing mother-in-law in violation of an ordinance that prohibited such action. The evidence established that such ordinance was not enforced on other trailers that were parked within the township except where the trailer was used as a residence. Thus, the *Vadnais* case is similar to the instant case.

In the *Vadnais* case, the court stated, in pertinent part, on page 19, as follows:

"We accept as settled law that under the equal protection clause of U.S. Const. Amend. XIV persons accused of violating a municipal regulatory ordinance imposing penal sanctions are protected from an intentional discrimination in the enforcement of the ordinance. *Yick Wo* v. *Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L. Ed. 220 (1886). * * * [A]n intentional or deliberate decision by public officials, acting as agents of the state, not to enforce penal regulations against a class of violators expressly included within the terms of such penal regulation does, in our view, under the principle of *Yick Wo,* constitute a denial of the constitutional guarantee of equal protection of the laws. See, Annotation, 4 A.L.R. 3d 404."

Pursuant to the *Vadnais* case, we conclude that the officials of the village of Columbiana intentionally, deliberately or systematically discriminated in the enforcement of subject ordinance and that plaintiff is precluded from prosecuting the defendants.

We hold that the location and installation of subject mobile home on subject commercially zoned property is an essen-

tial, incidental building to the use of the legal commercial business being conducted on such property. The unrebutted testimony of defendant Keister is that a series of burglaries were so costly that he either had to do something to prevent such burglaries or he would be forced to go out of business; that since subject mobile home was installed on this property for the purpose of the occupants of the mobile home to continuously watch this property, there have not been any more burglaries and that the idea of such an arrangement originated with Don Sumrok, former Chief of Police of the Columbiana Police Department who, by virtue of his position, should have had some expertise in the matter of preventing crimes. It is clear from the evidence that the location and installation of subject mobile home on subject property has been effective in preventing the burglaries that were so costly to defendant Keister.

Plaintiff contends that there is a distinction between subject mobile home and the other trailers that are permitted within the village of Columbiana because subject mobile home is occupied as a residence while the other trailers are not used as a residence and that defendant Keister could accomplish the same purpose for which he justifies subject mobile home by hiring a watchman. Defendant Keister's unrebutted testimony is, in effect, that it is not economically feasible to hire a watchman.

Plaintiff also contends that the location of subject mobile home at subject location imposes additional burdens on the municipality, such as additional use of water and sewage, increased traffic and parking problems and increased fire risk. However, we hold that any increased burden on the village of Columbiana by the location of subject mobile home on subject property is relatively minor compared to the burden on defendant Keister if plaintiff is successful in forcing subject mobile home to be removed from subject property and if such action eventually resulted in forcing Keister to go out of business because the cost of hiring sufficient watchmen to prevent burglaries was too high.

We recognize that the burden of proof is on the defendants to submit evidence of the economic necessity for the continued presence of subject mobile home on subject property as a residence for the watchman to establish that such building is an essential, incidental building to the use of subject property for the legal commercial business that is being conducted on subject property. We hold that defendants submitted sufficient evidence to establish a prima facie case that subject mobile home is an essential incidental building to the use of the legal commercial business being conducted on such property. The burden then shifted to plaintiff to rebut such testimony, but plaintiff did not offer any evidence in rebuttal to such testimony.

For the foregoing reasons, we sustain defendants' fifth assignment of error.

Judgment reversed. Final judgment for defendants.

*Judgment reversed.*

DONOFRIO, J., concurs.

O'NEILL, J., concurs in judgment only.

O'NEILL, J., concurring in judgment only. I concur in the final resolution of this case, but for the reason that I hold Section 1325.01 to be impermissibly vague. In and of itself, the ordinance expresses no definition of a mobile home or of a house trailer. In its brief, the appellee resorts to definitions found in R.C. Title 45 and Title 37 of the Administrative Code of the Ohio Department of Health. Since the ordinance in question was adopted on October 17, 1961, the statutory definition of a "house trailer" (R.C. 4501.01) has been modified. Under R.C. 4501.01, as it was

written when this ordinance was adopted, a "house trailer" was defined as:

"(J) * * * any self-propelled and non-self-propelled vehicle so designed, constructed, reconstructed, or added to by means of accessories in such manner as will permit the use and occupancy thereof for human habitation, when connected to indicated utilities, whether resting on wheels, jacks, or other temporary foundation and used or so constructed as to permit its being used as a conveyance upon the public streets or highways."

R.C. 4501.01 as amended defines a "house trailer" in paragraph (O) differently than in previous paragraphs (I) and (J) by removing the term "self-propelled." The new statute also specifically defines "recreational vehicle" (R.C. 4501.01[Q]), "motor home" (R.C. 4501.01[Q][2]) and "truck camper" (R.C. 4501.01[Q][3]) each of which appeared in the previous definition of "house trailer." Apparently a house trailer is not always a house trailer. Also, when the ordinance in question was adopted, present R.C. 1151.299 which defines a "mobile home" had not yet been adopted by the legislature.

Section 1325.01 prohibits the use of private property and imposes a criminal penalty for violation. Such an ordinance must be strictly construed against the government. Such strict construction requires precision:

"Penal statutes and ordinances are strictly construed and may not be extended by implication to cases not falling within their terms." *Cleveland* v. *Jorski* (1944), 142 Ohio St. 529 [27 O.O. 464], paragraph one of the syllabus.

The *Jorski* court, at page 532, cited from 14 American Jurisprudence 773, Section 19:

" 'The legislature, in the exercise of its power to declare what shall constitute a crime or punishable offense, must inform the citizen with reasonable precision what acts it intends to prohibit, so that he may have a certain understandable rule of conduct and know what acts it is his duty to avoid.' "

By reference to the history of state statutes, no certain and understandable and day-to-day definition of "mobile homes/house trailers" comes forth. Why should a citizen be required, in a zoning matter, to look to the ever-changing motor vehicle code (R.C. Title 45) and the law governing building and loan associations, so that he can know his duty. Very easily the Council of Columbiana can define the terms "mobile home/house trailer"; then application of the penal law can be precise. In the case of *State* v. *Meyers* (1897), 56 Ohio St. 340, the Ohio Supreme Court, at page 350, cited Chief Justice Marshall speaking in the case of *United States* v. *Wiltberger* (1820), 18 U.S. (5 Wheat.) 76, 96:

" '* * * To determine that a case is within the intention of a statute, *its* language must authorize us to say so.' " (Emphasis added.)

Section 1325.01, lacking in definition, is vague and therefore unconstitutional.