STATE v. LARSON TRANSFER AND STORAGE, INC., AND ANOTHER.

246 N. W. 2d 176.

September 17, 1976—No. 46498.

*Kempf & Miller* and *Thomas A. Miller,* for appellants.

*Gary Gandrud,* City Attorney, and *David Ornstein,* Assistant City Attorney, for respondent.

MACLAUGHLIN, JUSTICE.

Defendants, Larson Transfer and Storage, Inc., and Allstate Leasing Corp., were found guilty in Hennepin County Municipal Court of violations of the Bloomington City Code because of their failure to pave certain off-street parking areas. Defendant Larson appeals its conviction on the ground that § 10.01 of the Bloomington City Code is vague and unreasonable, and was discriminatorily enforced against it. Defendant Allstate appeals its conviction on the ground that § 11.13 of the Bloomington code does not make noncompliance with a condition in a conditional use permit a crime. We affirm the conviction of Larson, but reverse the conviction of Allstate.

Defendant Larson Transfer and Storage, Inc., is a Minnesota corporation engaged in the business of hauling goods and materials. In connection with its business Larson owns and operates a fleet of approximately 50 "semi trucks" and 300 trailers. Lar-

son's principal place of business is in Bloomington, Minnesota, where it owns property located at 9500 West Bloomington Freeway and leases property located at 950 West 94th Street. On these properties are large unpaved lots where Larson leaves its trucks and trailers when not in use. In July and August of 1974, the Building and Inspection Department of the city of Bloomington ordered Larson to pave these lots in compliance with Bloomington City Code, § 10.01. When Larson failed to do so, it was issued notices of violation to which it subsequently pled not guilty.

Defendant Allstate Leasing Corp. is engaged in the business of leasing "semi trucks" and trailers. In connection with its business Allstate leases property located at 2000 West 96th Street in Bloomington. On this property is a large unpaved lot where Allstate leaves its trucks and trailers when not in use. On August 17, 1973, Allstate obtained a conditional use permit under Bloomington City Code, § 11.13, for the use and development of the property. Included in the conditions for the permit were ones which required Allstate to pave the lot and install concrete curbing. When Allstate failed to comply with these conditions, it was issued a notice of violation of § 11.13, to which it pled not guilty.

On October 16, 1974, the criminal actions against Larson and Allstate were consolidated and the matter proceeded to trial in April 1975. The trial court denied defendants' motion to dismiss the charges and subsequently found Larson guilty of violating Bloomington City Code, § 10.01, and Allstate guilty of violating Bloomington City Code, § 11.13.

On this appeal Larson challenges the constitutionality of Bloomington City Code, § 10.01, alleging that the section is void for vagueness, and is unreasonable and without any substantial relation to public health, safety, and welfare. Larson further alleges that the city of Bloomington has discriminatorily enforced the ordinance against it in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. Defendant Allstate appeals its conviction under Bloomington

City Code, § 11.13, on the ground that the city of Bloomington may not bring a criminal prosecution against Allstate for failing to comply with conditions in a conditional use permit.

■ Bloomington City Code, § 10.01(A), provides:

*"Off-street parking areas,* except for single-family residences, *shall be paved* with Portland cement concrete or plant mixed bituminous surface, except that in addition to the minimum number of required parking spaces, three percent of the gross parking area lying more than twenty feet from the street right-of-way shall be improved and maintained with landscaping consisting of grass and evergreens or other approved plants. Such areas shall be so graded and drained as to dispose of all surface water accumulation within the area. Open sales lots for cars, trucks, and other equipment shall also be graded, drained, and paved but the interior landscaping is not required except as required by Section 11.13 Subd. D5 of the City Code." (Italics supplied.)

Larson claims this ordinance is unconstitutional on its face because the term "parking area" is so vague that "men of common intelligence must necessarily guess at its meaning and differ as to its application * * *." See, City of St. Paul v. Franklin, 286 Minn. 194, 196, 175 N. W. 2d 16, 17 (1970). Specifically, Larson complains that the ordinance contains no definition of what constitutes a "parking area" which would distinguish it from a storage area.

In State v. Target Stores, Inc. 279 Minn. 447, 471, 156 N. W. 2d 908, 923 (1968) this court quoting State v. McCorvey, 262 Minn. 361, 365, 114 N. W. 2d 703, 706 (1962), stated:

"A criminal statute must be definite enough to give notice of the conduct required to anyone who desires to avoid its penalties; it must be sufficiently definite to guide the judge in its application and the attorney in defending a person charged with its violation. No more than a reasonable certainty can be demanded."

While the Bloomington ordinance does not contain a specific definition of the term "parking area," this does not necessarily ren-

der the ordinance void. The term is not unconstitutionally vague if its meaning is—

"* * * fairly ascertainable by reference to similar statutes, prior judicial determinations, reference to the dictionary, or if the questioned words have a common and generally accepted meaning." State v. Willis, 218 N. W. 2d 921, 923 (Iowa 1974).

See, also, State v. Hayes, 244 Minn. 296, 70 N. W. 2d 110 (1955). Not only does the term "parking area" have a common and generally accepted meaning but it also has been adequately defined and distinguished from a storage area in prior judicial decisions. Courts have consistently distinguished the parking of vehicles from the storage of vehicles on the ground that parking connotes transience while storage implies a certain degree of permanency. Mergenthaler v. State, 293 A. 2d 287 (Del. 1972); State v. Breidenbach, 5 Ohio App. 2d 52, 213 N. E. 2d 745 (1964); Incorporated Village of Great Neck v. Green, 8 Misc. 2d 356, 166 N. Y. S. 2d 219 (Sup. Ct. 1957); Service Realty Corp. v. Planning and Zoning Board of Appeals, 141 Conn. 632, 109 A. 2d 256 (1954). This distinction comports with a dictionary definition of "park" which is "to set and leave temporarily."[1] Therefore, we conclude that the term "parking area" is sufficiently definite to comply with constitutional standards.

Further, we note that before initiating this criminal prosecution against Larson, the city of Bloomington informed Larson that its lots constituted off-street parking areas and therefore were required to be paved. Thus, Larson had actual notice of the conduct required and could have easily avoided the violation by complying with the ordinance.

Larson argues that its lots are not parking areas for its trucks and trailers but rather are storage areas which under Bloomington City Code, § 9.01, need not be paved. The trial court rejected this argument, finding that these lots were in fact parking areas. It is well established that "the findings of the court below are

---

[1] Webster's New Collegiate Dictionary (1973) p. 833.

to be sustained if there is reasonable evidence to support them." Adler v. State, 284 Minn. 31, 36, 169 N. W. 2d 233, 237 (1969); State ex rel. McGuire v. Tahash, 260 Minn. 334, 109 N. W. 2d 762 (1961). The record in the instant case clearly shows that a substantial number of the vehicles kept on Larson's lot were used by Larson on a daily basis in its business. Under similar facts the Supreme Court of Delaware held in Mergenthaler v. State, *supra*, that where a number of school buses were used whenever school was in session and also for charter trips, the keeping of the buses on a lot when they were not in operation constituted off-street parking rather than open storage. We conclude that the trial court properly found upon the evidence before it that Larson's lots were in fact parking areas and within the purview of Bloomington City Code, § 10.01.

■  Larson next contends that Bloomington City Code, § 10.01, violates due process because it is an arbitrary and unreasonable restriction on the use of private property. In Kiges v. City of St. Paul, 240 Minn. 522, 530, 62 N. W. 2d 363, 369 (1953) we stated that a municipal zoning ordinance will not be declared unconstitutional—

"* * * unless it affirmatively appears that the restriction is clearly arbitrary and unreasonable and without any substantial relation to public health, safety, morals, prosperity, or general welfare."

Moreover, as we stated in State ex rel. Howard v. Village of Roseville, 244 Minn. 343, 347, 70 N. W. 2d 404, 407 (1955):

"Insofar as zoning ordinances are concerned, it has frequently been held that what best furthers public welfare is a matter primarily for determination of the legislative body concerned * * *.

"Even where the reasonableness of a zoning ordinance is debatable, or where there are conflicting opinions as to the desirability of the restrictions.it imposes * * *, it is not the func-

tion of the courts to interfere with the legislative discretion on such issues."

Sun Oil Co. v. Village of New Hope, 300 Minn. 326, 333, 220 N. W. 2d 256, 261 (1974) ; Beck v. City of St. Paul, 304 Minn. 438, 448, 231 N. W. 2d 919, 925 (1975). Thus the scope of judicial review of a municipal zoning ordinance "must necessarily be narrow." Beck v. City of St. Paul, 304 Minn. 448, 231 N. W. 2d 925.

Three principal reasons are advanced by the city for requiring paving of off-street parking areas. First, and most important, paving prevents dirt and mud from being carried out into the public streets by the vehicles which use the lot. Dirt and mud on the public streets increases maintenance and sewer problems for the city and creates traffic hazards for the public. Second, paving promotes proper drainage of the lot, which improves traffic circulation and the safety of emergency vehicles. Finally, paving serves a legitimate city interest in improving the overall aesthetic quality of the city.

Larson argues that, since its lots are private and not generally accessible to the public, no public interest is served in requiring them to be paved.[2] This argument, however, overlooks the fact that the public interest may be adversely affected by Larson's operations on an unpaved lot even though the lot is not open to the public. Indeed, the record indicates that Larson's unpaved lots become very muddy after a rain or a snow melt. When one considers the heavy flow of Larson's trucks moving from such a muddy lot onto the public streets, it becomes clear that Larson's failure to pave these lots creates the very hazard that the ordinance was designed to prevent. Therefore, we conclude, especially in light of the narrow scope of review given a munici-

---

[2] Appellant also complains about the expense involved in complying with the ordinance. While cost of compliance is a factor which should be considered in assessing the overall reasonableness of the ordinance, it is well established that an ordinance will not be set aside solely because compliance with it is burdensome. Standard Oil Co. v. Marysville, 279 U. S. 582, 49 S. Ct. 430, 73 L. ed. 856 (1929).

pal zoning ordinance, that the Bloomington ordinance requiring the paving of off-street parking areas is a reasonable exercise of legislative discretion.[3]

■ Finally, Larson alleges that the city of Bloomington is discriminatorily enforcing the ordinance against it. In State v. Vadnais, 295 Minn. 17, 19, 202 N. W. 2d 657, 659 (1972) this court held that "an intentional or deliberate decision by public officials * * * not to enforce penal regulations against a class of violators expressly included within the terms of such penal regulation" constitutes a denial of equal protection of the laws. The burden, however, is upon Larson to prove by a clear preponderance of the evidence that the city has discriminatorily enforced the ordinance. City of Minneapolis v. Buschette, 307 Minn. 60, 240 N. W. 2d 500 (1976). Larson's allegation that the city is engaged in discriminatory enforcement is based on its complaint that some businesses in Bloomington have not yet been required to pave their parking lots. Larson specifically complains that the city has not enforced the ordinance against Ziegler, Inc. and Hayden-Murphy Equipment Company.

We conclude that these allegations fall far short of establishing a pattern of discriminatory enforcement. The record clearly discloses that the city has enforced the paving ordinance against several businesses in Larson's area. The mere fact that the city has not yet specifically enforced the ordinance against all potential violators is not sufficient to establish discriminatory enforcement. In State v. Vadnais, 295 Minn. 17, 19, 202 N. W. 2d 657, 659 (1972), we stated that "mere laxity in enforcement, does not itself establish a constitutional violation." In addition, the record indicates that the city has not enforced the ordinance against Ziegler, Inc. and Hayden-Murphy Equipment Company because of its belief that the farm and construction vehicles on

---

[3] See Fifty-Fourth Street Center, Inc. v. Zoning Board of Adjustment, 395 Pa. 338, 150 A. 2d 335 (1959) where the court upheld a municipal zoning requirement that a parking lot be hard surfaced and landscaped.

these lots are stored and not parked. In Fabio v. City of St. Paul, 267 Minn. 273, 277, 126 N. W. 2d 259, 262 (1964) we indicated:

"* * * The grounds for treating differently persons similarly situated may be slight, provided the discrimination is based on a reasonable distinction which is supported by the facts."

Since the farm and construction vehicles on these other lots are not used on the public streets on a regular basis, they do not create the same hazard of depositing dirt and mud on the streets as do Larson's trucks. Therefore, we find a reasonable distinction between Larson's operations and the operations of these other companies and conclude that there is no constitutional basis for excusing Larson's noncompliance with the ordinance.

■ Defendant Allstate contends that the city may not bring a criminal prosecution against it for failure to comply with the conditions in the conditional use permit. We agree. Bloomington City Code, § 11.13, which authorizes the issuance of conditional use permits, provides in part:

"Except when the findings and decisions of the Variance Board are affirmed by the City Council in accordance with Chapter 82 of the City Code, a conditional use permit for a new use shall not be granted unless the minimum standards and requirements of the district are met. No conditional use permit shall be granted unless the Council finds the following: (The Council may attach such other conditions to the permit as it may deem necessary in each particular case.)"

This section contains no clear indication that failure to comply with particular conditions attached to the permit constitutes a crime.

The city points out that § 1.07 of the Bloomington City Code provides:

"Any person violating any provisions of the City Code of Bloomington may be guilty of a misdemeanor, and upon conviction thereof may be punished by a fine not to exceed $300.00 or by imprisonment for not to exceed 90 days, or both."

According to the city, if one reads § 11.13 together with this general penalty provision, it can be inferred that failure to comply with a particular condition attached to a permit constitutes a misdemeanor. We do not believe that a criminal offense may be so easily established by implication. It is well established that penal provisions are to be strictly construed. State v. Shevlin-Carpenter Co. 99 Minn. 158, 108 N. W. 935 (1906). Before a person may be subject to criminal liability it must be reasonably certain that the statute or ordinance renders his conduct a criminal offense. State v. Kuluvar, 266 Minn. 408, 123 N. W. 2d 699 (1963). We conclude that the ordinance in this case does not clearly indicate that failure to comply with the conditions attached to the permit constitutes a crime and that such vagueness in the application of criminal sanctions is constitutionally impermissible. See, State v. Moseng, 254 Minn. 263, 95 N. W. 2d 6 (1959). In addition, we note that the conditions attached to Allstate's permit are not specifically included in the ordinance and thus are applicable only to Allstate. If failing to comply with these conditions constitutes a crime, then the only entity capable of committing this crime is Allstate.[4] The city has called no case to our attention wherein a court has imposed criminal sanctions on a person for failing to comply with a particular condition in a conditional use permit. Therefore, we hold under the facts in this case that the city of Bloomington may not initiate a criminal prosecution against Allstate for its alleged failure to comply with particular conditions attached to its conditional use permit. Accordingly, we reverse Allstate's conviction.

Affirmed in part and reversed in part.

---

[4] A conditional use permit is in the nature of a contract between the city and a private party for the use of a piece of property. Consequently, noncompliance with a condition attached to a permit is more analogous to a breach of a contract than to a criminal offense. There is no question that the city may revoke Allstate's permit for its failure to comply with the conditions. If Allstate continues to operate without the permit the city may then initiate a criminal prosecution for operating without a proper permit.