**STATE of Minnesota, Petitioner–Appellant,**

v.

**Brian Keith LUCAS, Respondent.**

No. C0–97–2145.

Supreme Court of Minnesota.

Jan. 21, 1999.

---

25. *Id.*

Clayton M. Robinson, Jr., Saint Paul City Attorney, Joel A. Franklin, Assistant City Attorney, Saint Paul, for petitioner-appellant.

John M. Stuart, State Public Defender, Mark D. Nyvold, Assistant State Public Defender, Saint Paul, for respondent.

Michael A. Hatch, Attorney General of Minnesota, Jeffrey F. Lebowski, Assistant Attorney General, Saint Paul, for amici curiae Minnesota Commissioner of Public Safety.

Moore, Costello & Hart, P.L.L.P., J. Patrick Plunkett, James E. Blaney, Saint Paul, for amici curiae Minnesota Safety Council, Inc.

## OPINION

GILBERT, Justice.

The issue in this case is whether a police officer may stop a vehicle based solely on a violation of Minn.Stat. § 169.685, subd. 5(b) (1998), the child passenger restraint statute. The trial court and court of appeals both held that the prohibition on citations based solely on a violation of Minn.Stat. § 169.686, subd. 1(3) (1998), the seat belt statute, was also applicable to the child passenger restraint statute, Minn.Stat. § 169.685, subd. 5(b) and, therefore, the police could not stop a motor vehicle based solely on a violation of Minn.Stat. § 169.685, subd. 5(b). Because we conclude that Minn. Stat. § 169.685, subd. 5(b) is unambiguous and, unlike Minn.Stat. § 169.686, subd. 1(3), contains no such prohibition, we reverse and remand for trial.

At 11:40 a.m. on October 6, 1997, a police officer noticed three small children standing up and jumping around in the back seat of a moving vehicle. The officer estimated that the children were all 4–years–old or younger. Based on this observation, the officer stopped the vehicle and its driver, Brian Keith Lucas, for a violation of Minn.Stat. § 169.685, subd. 5(b), the child passenger restraint statute. This statute requires that all children under the age of four be restrained in a child passenger restraint system while in a moving vehicle, and states:

No motor vehicle operator who is operating a motor vehicle on the streets and

highways of this state may transport a child under the age of four in a seat of a motor vehicle equipped with a factory-installed seat belt, unless the child is properly fastened in the child passenger restraint system. Any motor vehicle operator who violates this subdivision is guilty of a petty misdemeanor and may be sentenced to pay a fine of not more than $50. The fine may be waived or the amount reduced if the motor vehicle operator produces evidence that within 14 days after the date of the violation a child passenger restraint system meeting federal motor vehicle safety standards was purchased or obtained for the exclusive use of the operator.

Minn.Stat. § 169.685, subd. 5(b).

The officer asked Lucas for his driver's license, which Lucas said he did not have with him. Lucas then told the officer that he was the father of the three children, ages 3, 4 and 5 years old. The officer confirmed that the vehicle contained no child passenger restraint systems for the 3–year–old child and that none of the occupants of the vehicle were wearing seat belts. The officer further noticed a "strong odor of alcohol" on Lucas' breath, and Lucas admitted to drinking four or five beers between 7:00 or 8:00 a.m. and 11:00 a.m. Lucas failed several field sobriety tests and was placed under arrest. Lucas was transported to St. Paul police headquarters, where the arresting officer read Lucas the implied consent advisory and Lucas agreed to take a breath test. The breath test revealed Lucas had a blood alcohol content of .17%.

Pursuant to Minn.Stat. § 169.121 (1998), police charged Lucas with gross misdemeanor driving under the influence of alcohol, gross misdemeanor driving with an alcohol concentration of .10 or more, gross misdemeanor driving with an alcohol concentration of .10 or more as measured within two hours of driving, and three counts of gross misdemeanor child endangerment.

At his *Rasmussen* hearing, Lucas sought to suppress the evidence obtained as a result of the stop by challenging the stop, asserting

that police may not stop an individual solely for a violation of Minn.Stat. § 169.685, subd. 5(b). In this assertion, Lucas relied on language in Minn.Stat. § 169.686, subd. 1(3), the seat belt statute applicable to all persons in the front seats of a vehicle and to all children older than three but younger than eleven, regardless of where seated. This statute states in part:

> A peace officer may not issue a citation for a violation of this section unless the officer lawfully stopped or detained the driver of the motor vehicle for a moving violation other than a violation involving motor vehicle equipment.

*Id.* (emphasis added). Lucas argued that the prohibition against issuing citations based solely on a violation of Minn.Stat. § 169.686, subd. 1(3), the seat belt statute, also applied to Minn.Stat. § 169.685, subd. 5(b), the child passenger restraint statute.

The trial court, relying in part on *State v. Fiebke,* 554 N.W.2d 755 (Minn.App.1996), concluded that Minn.Stat. § 169.686, subd. 1, the seat belt statute, prohibited traffic stops based solely on a violation of that section. The trial court then reasoned that "It's clear from the heading of the statute in 169.685, that seat belts and passenger restraint systems for children are considered within the same portion of that statute * * *.[1] [I]t appears that the legislature has not seen fit to determine that child restraint systems for children deserve some different or additional treatment * * * ." Although the trial court did not make a finding that 169.685, subd. 5(b) was ambiguous, it still held that the prohibition of Minn.Stat. § 169.686, subd. 1(3) was applicable to stops based on a violation of Minn.Stat. § 169.685, subd. 5(b). Consequently, the trial court found that the stop based solely on the suspected violation of Minn.Stat. § 169.685, subd. 5(b) was improper and suppressed all evidence obtained as a result of the stop. The state appealed the pre-trial suppression order pursuant to Minn. R.Crim. P. 28.04, subd. 1(1).

---

1. In its analysis, the trial court relied in part on the headnotes to the statutes, although the law is clear that headnotes are mere catch words to indicate the contents of the section or subdivision and are not part of the statutes. See Minn.Stat. § 645.49 (1996).

■ The court of appeals, in a split decision, affirmed the trial court. · In doing so, the court of appeals differed from the trial court in its analysis and held that the trial court's reliance on *Fiebke*, 554 N.W.2d at 755, was misplaced because *Fiebke* did not address Minn.Stat. § 169.685, subd. 1(3). While it determined that Minn.Stat. § 169.685, subd. 5(b) contains no limitation on a peace officer's authority to stop a vehicle based solely on a violation of the child passenger restraint system statute, the court of appeals relied on the doctrine of *in pari materia* to read such a limitation into Minn. Stat. § 169.685, subd. 5(b). The doctrine of *in pari materia* is a tool of statutory interpretation that allows two statutes with common purposes and subject matter to be construed together to determine the meaning of ambiguous statutory language. *See State v. McKown*, 475 N.W.2d 63, 66–67 (Minn.1991). Using this doctrine, the court of appeals held that Minn.Stat. §§ 169.685, subd. 5(b) and 169.686, subd. 1(3) should be construed ·together "with respect to traffic stop preclusion," and thus concluded that police are prohibited from stopping a vehicle solely for a violation of Minn.Stat. § 169.685, subd. 5(b).

■ On appeal from a pre-trial suppression order, the state must show "clearly and unequivocally that the trial court has erred * * * and that, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Edrozo*, 578 N.W.2d 719, 722 (Minn.1998) (internal citation omitted). In this case, suppression of all of the evidence obtained from the stop would have a critical impact on the outcome of the case.

■ Therefore, the only issue this court must decide is whether the lower courts erred in suppressing the evidence obtained as a result of the stop of Lucas' vehicle based on their interpretation of Minn.Stat. § 169.685, subd. 5(b). We review issues of statutory construction *de novo*. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996).

; On appeal to this court, Lucas does not claim that the language of Minn.Stat. § 169.685, subd. 5(b) is ambiguous, and he correctly concedes that the doctrine of *in pari materia* does not apply to this case. *In*

*pari materia* is a tool of statutory construction applicable "in certain instances to determine the meaning of ambiguous statutory language." *McKown*, 475 N.W.2d at 67. We hold that, in this case, Minn.Stat. § 169.685, subd. 5(b) is not ambiguous. It does not have a restrictive citation provision similar to the prohibition of Minn.Stat. § 169.686, subd. 1(3), the seat belt statute. The seat belt statute's limitation on citations for a violation of that section is by its own terms limited to that particular section. Further, Minn.Stat. § 169.685, subd. 5(b), the child passenger restraint statute, contains no reference to Minn.Stat. § 169.686, subd. 1(3). Because neither statute is ambiguously worded, we have no need to use the doctrine of *in pari materia* in this instance.

■ Furthermore, it has long been the rule that "[w]here failure of expression rather than ambiguity of expression * * * is the vice of the enactment, courts are not free to substitute amendment for construction and thereby supply the omissions of the legislature." *State v. Moseng*, 254 Minn. 263, 269, 95 N.W.2d 6, 11–12 (1959); *see also Phelps v. Commonwealth Land Title Ins. Co.*, 537 N.W.2d 271, 274 (Minn.1995). In this case, adding a limitation on citations to 169.685, subd. 5(b) where there is no ambiguity would wrongfully substitute amendment for construction. Therefore, we agree with Lucas' concession that the doctrine of *in pari materia* may not be used to construe the limitation on citations in Minn.Stat. § 169.686, subd. 1(3) into Minn.Stat. § 169.685, subd. 5(b).

■ Lucas instead asserts that the citation limitation of Minn.Stat. § 169.686, subd. 1(3) should be read into Minn.Stat. § 169.685, subd. 5(b) because such a reading "only makes sense" in that it furthers the policies of that limitation, specifically the policy of preventing pretextual stops by police officers. However, where the legislature has expressed its intent unambiguously, it is not the place of this court to substitute its own policy beliefs for those of the legislature. *Cf. Moseng*, 254 Minn. at 269, 95 N.W.2d at 11–12.

We conclude that Minn.Stat. § 169.685, subd. 5(b) is unambiguous and contains no restrictive citation provision. Under the facts of this case, the police officers had a reasonable basis to stop Lucas and to issue him a citation. It was error to suppress evidence obtained as a result of the stop. Thus, we reverse the decision of the court of appeals that affirmed the trial court's suppression of the evidence, and remand the case to the trial court.

Reversed and remanded.

PAGE, Justice (concurring specially).

I concur in the result and the court's analysis in reaching that result. I write separately only for the purpose of noting that, from a plain reading of Minn.Stat. § 169.686, subd. 1(3) (1998), it is not at all clear, as the court of appeals held in *State v. Fiebke*,[1] that the provision prohibits a law enforcement officer from lawfully stopping the driver of a motor vehicle solely on the basis of a suspected violation of that section. Rather, as I read section 169.686, subd. 1(3), it only prohibits an officer from issuing a citation solely for a violation of its provision.

PAUL H. ANDERSON, Justice (concurring specially).

I concur in the result reached by the majority, but I write separately to add a point, to emphasize a point, and to point out statutory language that I conclude is confusing.

I would add to the majority's argument the fact that the origins of Minn.Stat. §§ 169.685, subd. 5(b) and 169.686, subd. 1(3) (1998) are very different. Minnesota statute section 169.686 was first enacted in 1986 after the United States Secretary of Transportation issued guidelines setting forth the minimum requirements necessary for state seat belt laws to meet federal standards. See Minn. Stat. § 169.684 (1986). This statute set forth mandatory requirements for seat belt use. Minnesota statute section 169.685 was enacted much earlier, in 1963, and specifically dealt with equipping motor vehicles with seat belts. The subdivision concerning the installation and use of child passenger restraint

systems was added to Minn.Stat. § 169.685 in 1981.

As the majority points out, Minn.Stat. § 169.685, unlike Minn.Stat. § 169.686, does not contain the provision that A peace officer may not issue a citation for a violation of this section unless the officer lawfully stopped or detained the driver of the motor vehicle for a moving violation other than a violation involving motor vehicle equipment. Minn.Stat. § 169.686, subd. 1(3). Because Minn.Stat. § 169.685 has a different origin, was first enacted more than 20 years before Minn. Stat. § 169.686, subd. 1(3), and has been amended numerous times, including in 1987, 1988, 1993, and 1994, it seems to me that we can infer the legislature chose not to include in Minn.Stat. § 169.685 the limiting language found in Minn.Stat. § 169.686. This is the position taken by the dissent to the court of appeals' majority opinion and I believe that this argument further supports the decision that we reach today.

The point I wish to emphasize is that our holding today applies only to the suppression of evidence obtained as a result of a stop under Minn.Stat. § 169.685, subd. 5(b), a statute which we hold to be clear and unambiguous. We are not construing Minn.Stat. § 169.686, subd. 1(3), a completely different statute. I believe that it is important to make this distinction absolutely clear, especially in light of Justice Page's concurrence. There well may be merit to Justice Page's conclusion that the court of appeals erred when it held that Minn.Stat. § 169.686 prohibits a law enforcement officer from lawfully stopping the driver of a motor vehicle solely on the basis of a suspected violation of that statute. *See State v. Fiebke*, 554 N.W.2d 755 (Minn.App.1996). But Minn.Stat. § 169.686 is not squarely before us today; therefore, I believe we should leave the interpretation of this statute for another day.

Finally, as I examine the language used in Minn.Stat. §§ 169.685, subd. 5(b) and 169.686, subd. 1(3), I conclude that certain parts of these two statutes are confusing. Minnesota statute section 169.686, subdivision 1(3) provides that a properly adjusted

---

1. 554 N.W.2d 755 (Minn.App.1996).

and fastened seat belt, including both the shoulder and lap belt, shall be worn by:

(3) a passenger riding in any seat of a passenger vehicle who is *older than three* but younger than 11 years of age.

(Emphasis added.)

Minnesota statute section 169.685, subdivision 5(b) provides that:

(b) No motor vehicle operator who is operating a motor vehicle on the streets and highways of this state may transport a child *under the age of four* in a seat of a motor vehicle equipped with a factory-installed seat belt, unless the child is properly fastened in the child passenger restraint system * * *.

(Emphasis added.)

I believe that older than three can be construed to mean a person who is three years and one day of age while under the age of four clearly means a person who has yet to reach four years of age. Wearing a properly adjusted and fastened seat belt including both the shoulder and lap belt is different from having a child properly fastened in a child passenger restraint system, yet it seems that both are statutorily required for a person older than three but under the age of four. This leads me to question whether it would be a proper defense to a citation for violation of Minn.Stat. § 169.685, subd. 5(3) to contend that, at the time the citation was issued, the child under the age of four, but at least three years and one day of age, was wearing a properly adjusted and fastened seat belt, including both the shoulder and lap belt.

My concern about this ambiguity is further heightened if, under some circumstances, violation of either of these two statutes could be construed to be a criminal violation. It is clear from our prior holdings that the criminal consequences which attend criminal violations of a statute obligate us to construe the statute's provisions strictly in favor of the accused. *See State v. Larson Transfer and Storage, Inc.,* 310 Minn. 295, 304, 246 N.W.2d 176, 182 (1976) (stating that penal provisions in statutes and municipal ordinances are strictly construed because [b]efore a person may be subject to criminal liability, it must

be reasonably certain that the statute or ordinance renders his conduct a criminal offense.).

While resolution of the dilemma caused by the different and possibly irreconcilable language used in these two statutes is not necessary to decide the case before us today, it may well be relevant in a future case. It is for this reason that I believe it is important to make this potential ambiguity known.

PAGE, Justice (concurring specially).

I join in the special concurrence of Justice Paul H. Anderson except as to his argument that this court should leave the interpretation of Minn.Stat. § 169.686, subd. 1(3) for another day.